UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
═══════════════════════════════════X

HAMPDEN ENGINEERING
CORPORATION,

               Plaintiff,

    vs.

SHEAR TECHNOLOGY, LLC,

               Defendant.
═══════════════════════════════════X

CIVIL ACTION NO.:

**VERIFIED COMPLAINT
FOR INJUNCTIVE RELIEF
AND DAMAGES**

The Plaintiff, HAMPDEN ENGINEERING CORPORATION, by and through its attorneys, the Law Offices of Kravis & File, P.C., as and for a verified complaint against the Defendant, does hereby allege, upon information and belief, as follows:

## THE PARTIES

1. That at all times herein mentioned, the Plaintiff, HAMPDEN ENGINEERING CORPORATION ("Hampden Engineering"), is a Massachusetts corporation with its principle place of business located at 99 Shaker Road, East Longmeadow, Massachusetts.

2. That at all times herein mentioned, the Defendant, SHEAR TECHNOLOGY, LLC ("Shear Technology"), is a domestic limited liability company organized and existing pursuant to the laws of the State of New Jersey.

3. That at all times herein mentioned, the Defendant, Shear Technology, is a foreign corporation duly authorized to do business in the State of New Jersey.

4. That at all times herein mentioned, the Defendant, Shear Technology, maintains a principle place of business at 663 Skyline Drive, Borough of Hopatcong, County of Sussex, State of New Jersey.

## JURISDICTION & VENUE

5.   That at all times herein mentioned, the within cause of action arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et. seq.* and under the Lanham Act, 15 U.S.C. § 1125.   The Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.   The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.   The parties are completely diverse and the matter in controversy exceeds $75,000.00.   Supplemental jurisdiction over the causes of action under the laws of the State of New Jersey is proper as substantially related to those causes of action over which the court has original jurisdiction, pursuant to 28 U.S.C. § 1367.

6.   Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

7.   For over sixty (60) years, Hampden Engineering has been a leader in the design and manufacture of engineering and technology training equipment.

8.   Hampden Engineering's designed and manufactured equipment is used by universities and technical and vocational schools, and in industry workforce development programs in over sixty (60) countries.

9.   The industry in which Hampden Engineering, creates, manufactures, and sells its products is a small one.

10. On or about April 29, 2013, Hampden Engineering applied to the United States Patent & Trademark Office ("USPTO") for registration of four (4) of its technical drawings, respectively identified herein as the "Teacher Unit X-1SR Drawing," the "Student Unit X-2SR Drawing," the "Hampden Engineering X-3 Meter Demonstration Drawing," and the "Hampden Engineering X-

4 Meter Connection Panel Drawing," collectively referred to herein as the "Hampden Engineering Registered Drawings," copies of which are attached hereto as *Exhibit A*.

11. The "Teacher Unit X-1SR Drawing" and the "Student Unit X-2SR Drawing" are registered with the USPTO under U.S. Copyright Registration No. VA 1-857-282, wherein a Certificate of Registration evidencing such copyright registration is attached hereto as *Exhibit B*.

12. The "Teacher Unit X-1SR Drawing" and the "Student Unit X-2SR Drawing" were created and published in 1997. See *Exhibit B*.

13. The Hampden Engineering "X-3 Meter Demonstration Drawing" is registered with the USPTO under U.S. Copyright Registration No. VA 1-857-284, wherein a Certificate of Registration evidencing such copyright registration is attached hereto as *Exhibit B*.

14. The Hampden X-3 Meter Demonstration Drawing was completed and published in 2006. See *Exhibit B*.

15. The Hampden Engineering "X-4 Meter Connection Panel Drawing" is registered with the USPTO under U.S. Copyright Registration No. VA 1-857-285, wherein a Certificate of Registration evidencing such copyright registration is attached hereto as *Exhibit B*.

16. The Hampden Engineering "X-4 Meter Connection Panel Drawing" was completed and published in 1994. See *Exhibit B*.

17. Hampden Engineering has manufactured, advertised, and sold products based upon the aforementioned Hampden Engineering Registered Drawings (the "Hampden Engineering Products").

18. The Hampden Engineering Products include products that have been manufactured, advertised, and sold by Hampden Engineering under the name "Model X-1SR" (the "Hampden Engineering X-1 Product"), "Model X-2SR" (the "Hampden Engineering X-2 Product"), "Model

3

X-3" (the "Hampden Engineering X-3 Product"), and "Model X-4" (the "Hampden Engineering X-4 Product").

19. Photographs of the Hampden Engineering Products are attached hereto as *Exhibit C*.

20. The Hampden Engineering X-1 Product is based upon the Teacher Unit X-1SR Drawing, and was manufactured and sold by Hampden Engineering at least as early as on or about 1997.

21. The Hampden Engineering X-2 Product is based upon the Student X-2SR Drawing, and was manufactured and sold by Hampden Engineering at least as early as on or about 1997.

22. The Hampden Engineering X-3 Product is based upon the Hampden Engineering X-3 Meter Demonstration Drawing, and was manufactured and sold by Hampden Engineering at least as early as on or about 2006.

23. The Hampden Engineering X-4 Product is based upon the Hampden Engineering X-4 Meter Connection Panel Drawing, and was manufactured and sold by Hampden Engineering at least as early as on or about 1994.

24. The Hampden Engineering Products are entitled to trade dress protection as the Hampden Engineering Products are inherently distinctive or have acquired secondary meaning, and are primarily non-functional in their design and overall appearance.

25. On or about 2013, a representative of Hampden Engineering became aware of correspondence which is attached hereto as *Exhibit D* (the "Iskander Communication").

26. On or about March 20, 2013, Hampden Engineering sent overnight letter correspondence to Shear and its chief office, Edan Peleg, informing Shear that they were in violation of the U.S. Copyright Act having, without permission or payments, reproduced disseminated, and/or prepared derivative works based upon Hampden's copyright works, among other allegations. See *Exihibit J* (the "Hampden Correspondence").

4

27. On or about April 5, 2013, Shear responded by letter to the Hampden Correspondence, stating, among other things, that Shear denies Hampden's allegations, and that Shear could not comply with Hampden's allegedly "unfair and anti-competitive demands.: See *Exhibit* K (the "Shear Correspondence").

28. The Iskander Communication is dated May 3, 2012 and is from Alex Iskander ("Mr. Iskander"), whom, upon information and belief, is the Engineering Manager of the New York City School Construction Authority ("NYCSCA"), to Edan Peleg ("Mr. Peleg"), whom, upon information and belief, is a Managing Member of Shear Technology.

29. As set forth in the Iskander Communication, NYCSCA approved the inclusion of "Science Lab Power Units manufactured by Shear Technology Inc. in the next revision of the *NYCSCA Standard Specifications*."  See *Exhibit D* (May 3, 2012 correspondence from Mr. Iskander to Mr. Peleg).

30. Upon information and belief, the *NYCSCA Standard Specifications* included written specifications for each of the "Science Lab Power Units" referred to in the Iskander Communication.

31. Upon information and belief, the "Science Lab Power Units" referred to in the Iskander Communication are based upon a set of drawings provided by Shear Technology to NYCSCA, wherein the set of drawings included a drawing identified herein as the "Shear Technology Instructors Power Supply Drawing," the "Shear Technology Student Power Supply Drawing," the "Shear Technology Meter Demonstration Unit Drawing," and the "Shear Technology Meter Connection Panel Drawing," copies of which are attached hereto as *Exhibit E*, and which are collectively referred to as the "Shear Technology Drawings."

32. Upon information and belief, Shear Technology had access to the Hampden Engineering Registered Drawings and misappropriated the copyrightable elements of the Hampden Engineering Registered Drawings to create the Shear Technology Drawings.

33. The Shear Technology Instructors Power Supply Drawing is, at the very least, substantially identical to the Teacher Unit X-1SR Drawing, and, as such constitutes an unlawful misappropriation of the copyrightable elements contained in the Teacher Unit X-1SR Drawing.

34. The Shear Technology Student Power Supply Drawing is, at the very least, substantially identical to the Student Unit X-2SR Drawing, and, as such constitutes an unlawful misappropriation of the copyrightable elements contained in the Student Unit X-2SR Drawing.

35. The Shear Technology Meter Demonstration Unit Drawing is, at the very least, substantially identical to the Hampden Engineering X-3 Meter Demonstration Drawing, and, as such constitutes an unlawful misappropriation of the copyrightable elements contained in the Hampden Engineering X-3 Meter Demonstration Drawing.

36. The Shear Technology Meter Connection Panel Drawing is, at the very least, substantially identical to the Hampden Engineering X-4 Meter Connection Panel Drawing, and, as such constitutes an unlawful misappropriation of the copyrightable elements contained in the Hampden Engineering X-4 Meter Connection Panel Drawing.

37. Upon information and belief, and at least as early as February 19, 2013, Shear Technology sold products on a Web site having the domain name www.sheartechnology.net/Products.php ("Shear Technology's Web site"), wherein, upon information and belief, such products are based upon the Shear Technology Drawings (the "Shear Technology Products"). *See Exhibit F* (pages taken from Shear Technology's Web site, February 19, 2013).

38. Upon information and belief, and as is demonstrated in *Exhibit F*, Shear Technology respectively marketed the Shear Technology Products under the following names: "Instructors Power Supply – IPS (also known as X-1)" (the "Shear Technology X-1 Product"); "Students Power Supply – SPS (also known as X-2)" (the "Shear Technology X-2 Product"); "Meter Demonstration Unit – MOU (also known as X-3)" (the "Shear Technology X-3 Product"); and "Meter Connection Panel – MCP (also known as X-4)" (the "Shear Technology X-4 Product").

39. The Shear Technology X-1 Product is, at the very least, substantially similar to the Hampden Engineering X-1 Product.

40. Upon information and belief, Shear Technology has manufactured the Shear Technology X-1 Product based upon the Instructors Power Supply Drawing, which infringes the Teacher Unit X-1SR Drawing, and/or Shear Technology has manufactured the Shear Technology X-1 Product based upon Shear Technology's access to the Hampden Engineering X-1 Product.

41. The Shear Technology X-2 Product is, at the very least, substantially similar to the Hampden Engineering X-2 Product.

42. Upon information and belief, Shear Technology has manufactured the Shear Technology X-2 Product based upon the Student Power Supply Drawing, which infringes the Student Unit X-2SR Drawing, and/or Shear Technology has manufactured the Shear Technology X-2 Product based upon Shear Technology's access to the Hampden Engineering X-2 Product.

43. The Shear Technology X-3 Product is, at the very least, substantially similar to the Hampden Engineering X-3 Product.

44. Upon information and belief, Shear Technology has manufactured the Shear Technology X-3 Product based upon the Meter Demonstration Unit Drawing, which infringes the Hampden X-3 Meter Demonstration Drawing, and/or Shear Technology has manufactured the Shear

Technology X-3 Product based upon Shear Technology's access to the Hampden Engineering X-3 Product.

45. The Shear Technology X-4 Product is, at the very least, substantially similar to the Hampden Engineering X-4 Product.

46. Upon information and belief, Shear Technology has manufactured the Shear Technology X-4 Product based upon the Meter Connection Panel Drawing, which infringes the Hampden X-4 Meter Connection Panel Drawing, and/or Shear Technology has manufactured the Shear Technology X-4 Product based upon Shear Technology's access to the Hampden Engineering X-4 Product.

47. Hampden Engineering has sold equipment to Midland Electrical Contracting ("MEC") for projects dealing with NYSCA projects at high schools and other schools throughout New York City, New York.

48. As evidenced by an estimate dated February 22, 2013 from Shear Technology to MEC and identified as Estimate # Curtis-0, a copy of which is attached hereto as *Exhibit G*, Shear Technology attempted to sell and/or sold the Shear Technology Products to MEC.

49. As evidenced by two estimates each of which is dated March 1, 2013 and which are from Shear Technology to MEC and which are respectively identified as Estimate # PS162-0 and Estimate # Curtis-2, copies of which are attached hereto as *Exhibit H*, Shear Technology attempted to sell and/or sold the Shear Technology Products to MEC.

50. Upon information and belief, Shear Technology used the Shear Technology Drawings in its negotiations with MEC.

51. On or about February 2013, one or more representatives of Hampden Engineering met with an engineer employed by Solar Electric Corporation ("Solar Electric") to discuss a quote made by Hampden Engineering for a project.

52. During the February 2013 meeting between the Hampden Engineering representative(s) and the Solar Electric engineer, the engineer showed Hampden Engineering's representative(s) copies of one or more of the Shear Drawings.

53. It was during this February 2013 meeting that Hampden Engineering first became aware of Shear's unlawful conduct towards Hampden Engineering.

54. Shortly after the February 2013 meeting, one or more representatives of Hampden Engineering discovered the Shear Technology Web Site.

55. Upon information and belief, Shear Technology copied the Hampden Engineering Registered Drawings to create the Shear Technology Drawings, which Shear Technology improperly passed off as its own.

56. Upon information and belief, Shear Technology used the Shear Technology Drawings and/or copied the Hampden Engineering Products to manufacture the Shear Technology Products, and improperly passed off the Shear Technology Products as its own.

57. On or about January, 2015, Hampden Engineering discovered that Bread and Roses High School ("Bread and Roses"), located in Manhattan, New York, was displaying and using in its science laboratories at least two units that Shear Technology manufactured and sold to Bread and Roses (the "Bread and Roses Units").

58. Photographs of the Bread and Roses Units, as displayed at Bread and Roses at least as early as January 2015, are attached hereto as *Exhibit I*.

59. The Bread and Roses Units include a unit that is, at the very least, substantially identical to the Hampden Engineering X-3 Product (the "Bread and Roses X-3 Unit"), and a unit that is, at the very least, substantially identical to the Hampden Engineering X-4 Product (the "Bread and Roses X-4 Unit").

60. As the Bread and Roses X-3 Unit is substantially identical to the Hampden Engineering X-3 Product, it constitutes an unlawful misappropriation of the trade dress protection afforded to the Hampden Engineering X-3 Product.

61. As the Bread and Roses X-4 Unit is substantially identical to the Hampden Engineering X-4 Product, it constitutes an unlawful misappropriation of the trade dress protection afforded to the Hampden Engineering X-4 Product.

62. Upon information and belief, Shear Technology had access to and copied the Hampden Engineering X-3 Product in its manufacture of the Bread and Roses X-3 Unit and improperly passed off the Bread and Roses X-3 Unit as its own, and/or that Shear Technology manufactured the Bread and Roses X-3 Unit based upon the Meter Demonstration Unit Drawing which infringes the Hampden X-3 Meter Demonstration Drawing.

63. Upon information and belief, Shear Technology had access to and copied the Hampden Engineering X-4 Product in its manufacture of the Bread and Roses X-4 Unit and improperly passed off the Bread and Roses X-4 Unit as its own, and/or that Shear Technology manufactured the Bread and Roses X-4 Unit based upon the Meter Connection Panel Drawing which infringes the Hampden X-4 Meter Connection Panel Drawing.

64. Upon information and belief, Shear Technology also manufactured and sold to Bread and roses a unit that is, at the very least, substantially identical to the Hampden Engineering X-1

Product (the "Bread and Roses X-1 Unit"), and a unit that is, at the very least, substantially identical to the Hampden Engineering X-2 Product (the "Bread and Roses X-2 Unit").

65. As the Bread and Roses X-1 Unit is substantially identical to the Hampden Engineering X-1 Product, it constitutes an unlawful misappropriation of the trade dress protection afforded to the Hampden Engineering X-1 Product.

66. As the Bread and Roses X-2 Unit is substantially identical to the Hampden Engineering X-2 Product, it constitutes an unlawful misappropriation of the trade dress protection afforded to the Hampden Engineering X-2 Product.

67. Upon information and belief, Shear Technology had access to and copied the Hampden Engineering X-1 Product in its manufacture of the Bread and Roses X-1 Unit and improperly passed off the Bread and Roses X-1 Unit as its own, and/or that Shear Technology manufactured the Bread and Roses X-1 Unit based upon the Instructors Power Supply Drawing which infringes the Teacher Unit X-1SR Drawing.

68. Upon information and belief, Shear Technology had access to and copied the Hampden Engineering X-2 Product in its manufacture of the Bread and Roses X-2 Unit and improperly passed off the Bread and Roses X-2 Unit as its own, and/or that Shear Technology manufactured the Bread and Roses X-2 Unit based upon the Student Power Supply Drawing which infringes the Student Unit X-2SR Drawing.

69. Hampden Engineering has spent years developing its reputation in the highly specialized field of power units.

70. Because of Shear Technology's improper conduct, current and potential Hampden Engineering customers will likely believe that Hampden Engineering is passing others' products and experience off as its own – the exact opposite of what is in fact occurring.

71. Through its improper conduct, Shear Technology has confused the public and has led the public to falsely believe that Hampden Engineering sponsors or endorses Shear Technology.

72. Upon information and belief, Shear Technologies continues to submit bids using the Shear Technology Drawings and/or by using drawings derived from the Hampden Engineering Registered Drawings.

73. Upon information and belief, Shear Technologies continues to manufacture and sell the Shear Technology Products without authorization from Hampden Engineering.

### COUNT I
**Copyright Infringement of the Hampden Engineering Registered Drawings –
17 U.SC. §§ 101 *et. seq.***

74. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

75. By its actions alleged above, Shear Technology has infringed and will continue to infringe the Hampden Engineering Registered Drawings.

76. Shear Technology has no license or any other form of permission to copy, duplicate, sell, distribute, or claim copyright ownership in any portion of the Hampden Engineering Registered Drawings.

77. Shear Technology's acts of infringement are willful pursuant to the Copyright Act, 17 U.S.C. § 504.

78. Shear Technology's acts of infringement are in degradation of and injurious to Hampden Engineering's exclusive rights as the owner and/or administrator of the Hampden Engineering Registered Drawings.

79. Hampden Engineering has sustained, and will continue to sustain, damage to the value of the creative works subject to the Hampden Engineering Registered Drawings described above.

## COUNT II
### Unfair Competition of the Hampden Engineering Registered Drawings – Passing Off

80. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

81. Hampden Engineering owns the Hampden Engineering Registered Drawings.

82. At all times material hereto, the Hampden Engineering Registered Drawings are inured and imbued with certain goodwill for the benefit of Hampden Engineering.

83. Shear Technology passed off the Hampden Engineering Registered Drawings as its own.

84. Shear Technology's conduct constitutes unfair competition.

85. As a result of Shear Technology's unfair competition, Hampden Engineering has suffered, and continues to suffer, substantial harm.

## COUNT III
### Unfair Competition of the Hampden Engineering Products – Passing Off

86. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

87. At all times material hereto, Hampden Engineering owns the Hampden Engineering Products.

88. At all times material hereto, Hampden Engineering Products are inured and imbued with certain goodwill for the benefit of Hampden Engineering.

89. At all times material hereot, Shear Technology passed off the Hampden Engineering Products as its own.

90. Shear Technology's conduct constitutes unfair competition.

91. As a result of Shear Technology's unfair competition, Hampden Engineering has suffered, and continues to suffer, substantial harm.

**COUNT IV**
**Trade Dress Infringement of the Hampden Engineering Products –**
**15 U.S.C. § 1125 *et. seq.***

92. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

93. The Hampden Engineering Products are inherently distinctive or have acquired secondary meaning in the marketplace.

94. The Shear Technology Products are confusingly similar in their overall look and appearance to the Hampden Engineering Products.

95. Shear Technology has misappropriated features from the Hampden Engineering Products that are primarily non-functional.

96. Shear Technology's acts of trade dress infringement were willful and knowing and have caused and are causing great and irreparable injury to Hampden Engineering and to the goodwill generated by Hampden Engineering in the Hampden Engineering Products in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving Hampden Engineering with no adequate remedy at law.

97. By reason of the foregoing, Hampden Engineering is entitled to injunctive relief against Shear Technology, restraining further acts of trade dress infringement, and to recover attorneys' fees and any damages proven to have been caused by reason of Shear Technology's aforesaid acts of trade dress infringement.

## COUNT V
### Injurious Falsehood

98. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

99. Shear Technology made false statements harmful to Hampden Engineering's interest.

100.     Shear Technology knew or should have known that its actions were likely to cause harm to Hampden Engineering.

101.     Shear Technology knew that the statements it made were false.

102.     As a result of Shear Technology's injurious falsehoods, Hampden Engineering has suffered substantial harm.


## COUNT VI
### Tortious Interference with Business Relationship(s)

103. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

104. At all times material hereto, Hampden Engineering maintained numerous prospective economic or contractual relationships with purchasers of its products, including but not limited to the Hampden Engineering Products.

105. At all times material hereto, Shear Technology was aware that Hampden Engineering maintained business relationships and contemplated contracts of economic benefit with persons seeking the manufacture of power units.

106. By its above-described actions, Shear Technology intentionally and maliciously interfered with Hampden Engineering's business relationships by luring away, and/or by using devious, improper, and unrighteous means, customers of Hampden Engineering.

107. As a result of Shear Technology's actions, Hampden Engineering has suffered substantial harm.

<h3 style="text-align:center">COUNT VII<br>Conversion</h3>

108. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

109. Shear Technology intentionally or wrongfully exercised acts of ownership, control, or dominion over Hampden Engineer's property without right to do so.  Shear Technology's actions constitute conversion of Hampden Engineering's property.

110. Shear Technology's above-described conduct has caused Hampden Engineering substantial harm.

<h3 style="text-align:center">COUNT VIII<br>Violation of NJ Consumer Fraud Act – N.J.S.A. 56:8-2 et. seq.</h3>

111. Hampden Engineering repeats, realleges, a restates the allegations contained in the preceding paragraphs as if fully set forth herein at length.

112. Hampden Engineering and Shear Technology are each engaged in trade or commerce.

113. Shear Technology's above-described actions constitute unfair or deceptive acts or practices.

114. Shear Technology's unfair or deceptive acts or practices occurred primarily and substantially within the States of New York and New Jersey.

115. Shear Technology's unfair or deceptive acts or practices caused Hampden Engineering substantial harm.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, HAMPDEN ENGINEERING CORPORATION, respectfully requests that this Court:

A. Enter judgment on all counts of the Verified Complaint in favor of the Plaintiff, Hampden Engineering, in an amount to be determined at trial; and

B. On Count I, award the Plaintiff statutory damages, attorney's fees, and any gains, profits, and advantages obtained by the Defendant, Shear Technology; and

C. On Counts IV and V, award the Plaintiff attorney's fees, and any gains, profits, and advantage obtained by the Defendant, Shear Technology; and

D. On Count VIII, award the Plaintiff treble damages plus attorney's fees; and

E. After notice and a hearing, enter a preliminary injunction enjoining Shear Technology, its agents, servants, employees, attorneys, successors, or assigns, and all those acting in concert with Shear Technology, from: (1) infringing Hampden Engineering Corproation's copyrights; (2) infringing Hampden Engineering's trade dress; (3) passing off Hampden Engineering's Products as Shear Technology's; and (4) failing to disclose to Hampden Engineering all instances in which Shear Technology has presented the Hampden Engineering Products as Shear Technology's Products.

F. After trial, enter a permanent injunction in the form of Prayer E; and

G. Award such further and other relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

The Plaintiff, HAMPDEN ENGINEERING CORPORATION, hereby demands a trial by a jury on all issues so triable.

17

Dated: Newark, New Jersey
      October 6, 2015

                                                        KRAVIS & FILE, P.C.,
                                                        *Attorneys for Plaintiff*

                                                        Matthew A. Wurgaft, Esq. (MW1734)
                                                        201 Washington Street
                                                        Newark, New Jersey 07102
                                                        P:  (973) 242 – 6220
                                                        F:  (646) 878 – 9039
                                                        mwurgaft@kravisfile.com

## VERIFICATION

STATE OF  Massachusetts          )
                                 ) ss.:
COUNTY OF   Hampden              )

I, MICHAEL J. FLYNN, of full age and sound mind, as an Officer or Director of the

Plaintiff, HAMPDEN ENGINEERING CORPORATION, does hereby depose that I have read

the foregoing Complaint.   The facts set forth therein are true except for those stated upon

information and belief and as to those matter I believe them to be true.



MICHAEL J. FLYNN

Sworn to before me this
**9th** Day of   **October**   , 2015

Notary Public –  Donna F.  Kelly

My commission expires June 8,  2015